UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMIE LEWIS, | ) |
| Plaintiff, | ) No. 17 C 4181 |
| v. | ) |
| | ) Judge Edmond E. Chang |
| THOMAS DART, SHERIFF OF COOK COUNTY, and COOK COUNTY, IL | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

After breaking his foot, Jimmie Lewis used crutches to get around when he was detained in Cook County Jail. R. 40, DSOF ¶ 4.[1] Lewis alleges that, for his court appearances, he had to walk up and down two steep ramps in the basement of the Leighton Courthouse without any help. *Id.* ¶ 5. He also asserts that officers took away his crutches when he was placed in the courthouse lockup, and it was difficult to use the restroom in the lockup. *Id.* ¶ 7, 11. So Lewis brought this suit against Sheriff Thomas Dart and Cook County for violating the Americans with Disabilities Act and the Rehabilitation Act. *See generally,* R. 1, Compl.; 42 U.S.C. § 12132; 29 U.S.C. § 794(a).[2] Now, the Defendants move for summary judgment, arguing that Lewis has

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" for the Defendants' Statement of Facts [R. 40]; "PSOF" for Lewis's Statement of Additional Facts [R. 43]; "Pl. Resp. DSOF" for Lewis's Response to the Defendants' Statement of Facts [R. 43]; "Def. Resp. PSOF" for the Defendants' Response to Lewis's Statement of Additional Facts [R. 46]. If both parties agree on a particular fact, then only the asserting party's Statement is cited.

[2]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331.

not exhausted administrative remedies as required by the Prison Litigation Reform Act. 42 U.S.C. § 1997e. For the following reasons, the motion is granted in part and denied in part.

## I. Background

In deciding the Sheriff's[3] motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In April 2017, Jimmie Lewis entered the Cook County Jail as a pretrial detainee. Compl. ¶ 2; R. 40-1, DSOF Exh. A, Lewis Dep. Exh. 1, Compl.[4] During the course of his arrest, Lewis had broken his left foot, and was prescribed crutches to walk, because the foot could not bear any weight. DSOF Exh. A, Lewis Dep. 32:11-21; DSOF ¶ 4.

While awaiting trial in his criminal case, Lewis had to attend his court appearances at the Leighton Courthouse. In the courthouse basement, there are two steep ramps that Lewis had to climb in order to get to the courtroom. DSOF ¶ 5. His crutches made it difficult for Lewis to walk up the ramps, and he frequently complained to officers that the ramps were too steep. DSOF ¶ 8. This required Lewis to take a lot of time to carefully go up and down the ramps. *Id.*

---

[3]For ease, the Opinion will occasionally refer to the Defendants collectively as the Sheriff, unless reference to the individual Defendants is necessary.
[4]Lewis's deposition is the first and only exhibit to the Defendants' Statement of Facts, and is attached in full as "Exhibit A." But the deposition itself had exhibits, numbered from 1 to 5. To avoid confusion, when citing to an exhibit of that deposition, the Opinion will refer primarily to the Defense Statement of Facts followed by the numerical exhibit number from the *deposition*, with the understanding that those exhibits are included as supporting materials in the summary judgment briefings by way of the Defendants' Statement of Facts under Local Rule 56.1.

Due to previous litigation, Sheriff Dart and Cook County are aware that those ramps do not actually comply with the ADA's slope and landing requirements. PSOF ¶ 1. As a result, the Sheriff's Office amended its orders to require officers to provide assistance to *wheelchair* users on the ramps. *Id.* ¶ 2. But that change was silent as to detainees with other types of ambulatory disabilities or devices. *Id.* ¶ 3. The Leighton Courthouse did post a "Notice-Order" instructing detainees to wait for an officer to escort them up or down the ramp, and to ask for assistance if needed. *Id.* ¶ 18.

Because he had trouble navigating the courthouse ramps, Lewis filed a grievance with the Jail in May 2017, asking for a wheelchair to use for his court appearances. DSOF ¶ 13; DSOF Exh. 5, Grievance.[5] In the grievance, Lewis explained that he had difficulty getting up and down the ramps with his broken foot and that he had previously asked for a wheelchair to attend court, but Jail and medical staff refused. DSOF Exh. 5, Grievance. In its response to his grievance, the Sheriff's Office did not directly address Lewis's complaint about the ramps, saying only that he had been seen by the orthopedist, who had recommended crutches. PSOF Exh. 1, Grievance Resp.[6] The same day that he received this response, Lewis appealed, pointing out that his concern was not about his everyday ambulatory needs, but that he was only requesting a wheelchair for court. *Id.*, Grievance Appeal. But the Sheriff's Office rejected the appeal, repeating that Lewis had seen the orthopedist

---

[5]Lewis filed his grievance after he was in contact with his attorneys in this matter. DSOF ¶ 16.

[6]PSOF Exh. 1 is both the response Lewis initially received from Jail officials to his original grievance *and* his appeal to that response. Inmates file for an appeal using the same form. It will be referred to interchangeably as the Grievance Response and Grievance Appeal when helpful for clarity.

3

and asserting that Lewis had been told to wean off crutches. *Id.* There is no evidence that Lewis ever did receive a wheelchair to use at court hearings.

In addition to his difficulty navigating the courthouse ramps, Lewis asserts that the holding cell at the courthouse was not ADA compliant. For each court appearance, officers would take his crutches and handcuff him when he entered the holding cell (which is also called the "bullpen"). DSOF ¶ 10. Because he was handcuffed and did not have his crutches, Lewis had difficulty using the restroom in the bullpen. *Id.* ¶ 11. But he never did ask officers for his crutches back or to help him when trying to use the restroom in the cell. *Id.* ¶ 12. According to at least one correctional officer, the policy to take away crutches in the bullpen was codified in a general order of the Sheriff's Office. PSOF ¶ 12; *id.* Exh. 6, Payton Dep. at 37:23-38:23, 58:24-59:6. Lewis also never filed a formal grievance on this complaint. DSOF ¶ 17. It is true, however, that the grievance form does specifically explain that an inmate may not grieve about "non-grievable matters," including the "formulation of departmental policies." PSOF ¶ 7; DSOF Exh. 5, Grievance. As the Chief of the Department of the Corrections explained, those matters are nongrievable because they "relate[] to procedures the Department carries out, how the Department operates." PSOF ¶ 8; *Id.* Exh. 5, Johnsen Dep. 26:12-23.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). (It is worth noting that if a credibility call was necessary on the exhaustion defense, then there would not be a jury trial, but rather an evidentiary hearing, because exhaustion is a precondition of suit rather than an issue for the jury.) In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Overview

Lewis brings several claims under the ADA and the Rehabilitation Act. Congress enacted the Americans with Disabilities Act "to provide a clear and comprehensive national mandate for the elimination of discrimination against

5

individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA prohibits public entities from discriminating against persons with disabilities by excluding them from participation or denying them the benefits of their "services, programs, or activities." 42 U.S.C. § 12132. Public entities include state and local governments, as well as any department or instrumentality of them. 42 U.S.C. § 12131. So Title II does apply to the Cook County Sheriff's Office.

But the subject of the pending motion is not the merits of the ADA or Rehabilitation Act claims. Instead, the question is whether Lewis exhausted administrative remedies before filing the lawsuit. Under the Prison Litigation Reform Act, a prisoner cannot bring a lawsuit "with respect to prison conditions" under any federal law until after exhausting available "administrative remedies." 42 U.S.C. § 1997e(a)(1); *McCoy v. Gilbert*, 270 F.3d 503, 507 (7th Cir. 2001). Pretrial detainees are considered prisoners for purposes of the Prison Litigation Reform Act because they are in custody while "accused of … violations of criminal law." *Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004) (quoting 28 U.S.C. § 1915(h)). When contested, exhaustion is a threshold issue. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The contention that a prisoner has failed to exhaust administrative remedies is an affirmative defense that the defense has the burden of proving. *King v. McCarty,* 781 F.3d 889, 893 (7th Cir. 2015).

Here, that means the Sheriff has the burden to show that Lewis failed to exhaust administrative remedies before bringing the lawsuit. Like any other prisoner, Lewis must comply with "the specific procedures and deadlines established

by the prison's policy." *King,* 781 F.3d at 893 (citing *Woodford v. Ngo,* 548 U.S. 81, 93 (2006)). Even if the prison's administrative process does not authorize the type of relief that a prisoner wants, still the prisoner must exhaust the process. *Booth v. Churner, et al,* 532 U.S. 731, 741 (2001); *Perez v. Wisc. Dept. of Corrections,* 182 F.3d 532, 536 (7th Cir. 1999) ("No one can know whether administrative requests will be futile; the only way to find out is to try."). At the same time, even though exhaustion is mandatory and not waivable by the courts, *Ross v. Blake,* 136 S. Ct. 1850, 1856-57 (2016), prisoners are not held to patently impossible standards, *King,* 781 F.3d at 893. A detainee need only complete "available" administrative remedies. 42 U.S.C. § 1997e(a)(1). Prison officials cannot hobble the process and "immunize themselves" by relying on procedures that do not actually exist or that cannot be complied with, or by exploiting an indefinite delay in responding to a grievance. *King*, 781 F.3d at 893; *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001).

### B. Leighton Courthouse Ramps

Lewis first targets the steep ramps in the Leighton Courthouse basement. Specifically, Lewis claims that he was improperly denied (1) the use of a wheelchair on the ramps; and (2) the assistance of Jail officials in getting up and down the ramps when he used crutches. On the wheelchair claim, Lewis did file a grievance that specifically asked for a wheelchair that could be pushed up the ramps. DSOF Exh. 5, Grievance. In its motion to dismiss, the Sheriff's Office, for some reason, cites an Illinois statute governing the three-step grievance process required for *Illinois*

7

Department of Corrections inmates. R. 41, Def. Br. at 5 (citing 20 Ill. Adm. Code § 504.810(a)). It should come as no surprise that Lewis did not complete the steps required for Illinois Department of Corrections prisoners—because he was not one. Rather, Lewis was a pretrial detainee housed by the Cook County Sheriff's Office. DSOF ¶ 1. This should go without saying: the *Illinois* Department of Corrections grievance procedure does not apply to Lewis as a pretrial detainee in *Cook County* Jail.[7]

In any event, the record evidence shows that Lewis did go through the Cook County Jail grievance procedure on the wheelchair claim, including through the appeals process. DSOF Exh. 5, Grievance; PSOF Exh. 1, Grievance Appeal. The Sheriff contends that Lewis was informed that he could request help going up and down the ramps, and because he had that opportunity to ask for help, Lewis still had administrative remedies "available" to him, even on the wheelchair claim. Def. Br. at 7.[8] But Lewis's claim that the Jail should have provided a wheelchair is independent from any additional request for help on the ramps. And Lewis clearly *did* appeal the wheelchair decision—on the same day and on the very same form on which he

---

[7]The regulation cited by the Defendants "applies to offenders assigned to correctional facilities within the Department of Corrections." 20 Ill. Adm. Code § 504.800.

[8]The Defendants cite DSOF ¶ 18 for their contention that Lewis was offered assistance in response to his grievance. *See also* DSOF Exh. 2, Photo Order. But that actually only states that Lewis was made aware of the Notice-Order posted at the Leighton Courthouse near the ramps stating that an inmate must wait for an officer escort before using the ramps and informing inmates that they may request help. DSOF ¶ 18. That is not the same as specifically responding to Lewis's grievance with an offer of assistance. The text of the grievance response does not. *See* PSOF Exh. 1, Grievance Resp.

8

received the initial response. PSOF Exh. 1, Grievance Appeal. So, on the wheelchair claim, Lewis exhausted administrative remedies.⁹

The story is different on the claim that the Jail failed to provide Lewis with help getting up and down the ramps when he used crutches.¹⁰ Lewis never did file a grievance on that lack of assistance. The wheelchair grievance does not mention that he needed or wanted assistance going up and down the ramps when using crutches— it only says that he wants a wheelchair. DSOF Exh. 5, Grievance. To be sure, Lewis wrote on the grievance form that it is "difficult for me to go up and down the ramp in my condition," but the statement appears only in support of the request for a wheelchair. *Id.* He could have grieved the lack of assistance as an alternative to a wheelchair, but he did not. Indeed, a Jail official reading the grievance would not know whether Lewis had asked officers or staff for help walking up and down the ramps; for all the official would know from the grievance, maybe Lewis was getting that sort of help. And, by this time, Lewis also had the benefit of attorney assistance (he was already in contact with his lawyers) when he filed the wheelchair grievance, DSOF ¶ 16, so this is not a nitpick about a purely *pro se* authored form. Lewis failed to grieve the claim premised on a lack of help on the ramps when he used crutches.

Against this, Lewis argues that the Jail's grievance procedure barred him from filing a grievance on getting help on the ramps when using his crutches. Lewis gets

---

⁹Although Lewis did not formally cross-move to knock out the exhaustion defense on the wheelchair claim, it does not appear that there is a genuine issue on this particular claim. At the next status hearing, the defense should be prepared to explain why summary judgment *against* the defense on this claim is not warranted.

¹⁰To the extent that Lewis makes the same ADA complaint against these Defendants for the Cermak medical building ramp, this same analysis applies. *See* Pl. Resp. DSOF ¶ 9.

9

to that conclusion by pointing to a statement on the grievance form, specifically: the "formulation of departmental policies" is a "non-grievable matter." DSOF Exh. 5, Grievance; Pl. Resp. at 2, 4; PSOF ¶ 7. To Lewis's way of thinking, there was an "absence of a policy" for helping detainees with crutches, so asking for that sort of help would involve the "formulation" of a policy, which is non-grievable. R. 44, Pl. Resp. at 2.

But that is just wordplay. To get help for *himself*, Lewis did not have to ask the Sheriff to "formulate" a "policy" on helping detainees with crutches. He could just ask for help for himself. Sure, the Sheriff had not adopted a "policy" on that type of assistance, but "formulation of departmental policies" is not so expansive as to include any policy's *absence.* If it did, then a detainee could wordsmith any failure to provide a service (or even any particular *thing*) as the "absence of a policy" to provide that service or thing—and thus be exempt from exhaustion. That interpretation of the exhaustion requirement also would undermine its twin goals, namely, to "reduce the quantity" and "improve the quality" of prisoner suits. *See Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). Also, the exhaustion requirement gives prisons "a fair opportunity to correct their own errors." *Pyles v. Nwaobasi*, 829 F.3d, 860 867 (7th Cir. 2016) (quoting *Ngo*, 548 U.S. at 94). None of those goals would be met if the Jail's grievance form is interpreted in the way that Lewis proposes. All signs—the text of the grievance form, logic, and the goals of the exhaustion requirement—point toward Lewis's failure to exhaust the claim that the Jail should have provided assistance when he used crutches on the ramps. Summary judgment is granted as to that claim.

## C. Holding Cell

Next up is Lewis's challenge to the Sheriff's policy of taking away a detainee's crutches after the detainee goes into a courthouse holding cell. This time Lewis is correct: there was no way for him to grieve this issue because the Sheriff expressly adopted a policy requiring the removal of crutches. As discussed earlier, the Sheriff's Office does not permit "formulation of departmental policies" to be grieved. DSOF Exh. 5, Grievance. It is undisputed that the Sheriff's Office has issued a General Order requiring the removal of a detainee's crutches when the detainee is held in a courthouse bullpen. PSOF ¶ 12; Def. Resp. PSOF ¶ 12; PSOF Exh. 6, Payton Dep. 37:23-38:23, 58:24-59:6.[11] Correctional Officer Vincent Payton testified that he received a General Order espousing that policy, Payton Dep. 37:23-38:23, and the defense offers no evidence to the contrary.

There is also no question that the no-crutches policy is the sort of policy that the Sheriff would consider non-grievable. The Chief of the Cook County Department of Corrections, Jeff Johnson, testified that non-grievable policies include those that "relate[] to procedures the Department carries out, how the Department operates." PSOF Exh. 5, Johnsen Dep. 26:20-23. No contrary evidence has been offered to

---

[11]The defense does contend that when detainees must use the restroom, officers are supposed to give back crutches or auxiliary aids. Def. Resp. PSOF ¶ 12 (citing Payton Dep. 38:13-16); *see* PSOF, Exh. 6. But whether the Sheriff enforces a policy that does not include giving back the crutches to help in using the bullpen's restroom is a question on the *merits*, not exhaustion. In other words, Lewis has framed the policy at issue as depriving detainees of crutches in the bullpen, rendering the crutches unavailable for access to the toilet. He was not permitted to grieve that policy. At a trial on the merits, however, Lewis will bear the burden of proving that the policy actually exists.

11

counter that interpretation or otherwise explain the types of grievances that fit into the non-grievable category. So the no-crutches policy was not grievable.[12]

Separate from the no-crutches policy, Lewis's final claim is that officers did not help him use the restroom in the bullpen. Like the ramp-assistance claim, however, Lewis could have grieved the lack of help, but failed to do so. There is no evidence of an express *policy* barring officers from helping detainees use the restroom in the bullpens. To be sure, Officer Payton disclaimed responsibility for helping in that situation; he actually testified that officers are responsible for giving detainees *back* their crutches or aids in order to use the restroom. PSOF Exh. 6, Payton Dep. 38:8-23. But like the ramp-assistance situation, nothing in the record supports a finding that officers are barred from helping by some express policy. At most, there is an "absence" of a policy requiring the officers to help. That is not the sort of "formulation of department polic[y]" prohibited by the Sheriff's grievance rules. So Lewis could have, but did not, file a grievance complaining about the lack of officer-assistance to access restrooms in the bullpens. Summary judgment on this claim is thus granted.

## IV. Conclusion

For the reasons discussed, summary judgment on the exhaustion defense is granted in part and denied in part. Lewis successfully exhausted the wheelchair-request claim and the no-crutches claim. But he failed to exhaust the claims that officers failed to assist him on the ramps when he used crutches and failed to assist

---

[12]Again, Lewis did not formally cross-move against the exhaustion defense, but it does not appear that there is a genuine issue on whether the no-crutches policy was non-grievable. So, again, at the next status hearing, the defense should be prepared to explain why summary judgment *against* the defense on this claim is not warranted.

12

him in using the bullpen restroom. Those claims are dismissed for failure to exhaust. Now that this motion has been decided, the parties shall promptly engage in settlement negotiations. If the negotiations do not succeed, or if the parties do not want a settlement-conference referral, then the parties shall be prepared to discuss the litigation track forward (including expert discovery, *see* R. 38, 12/04/17 Minute Entry) at the next status hearing.

                                                            ENTERED:

                                                            s/Edmond E. Chang
                                                   Honorable Edmond E. Chang
                                                   United States District Judge

DATE: July 31, 2018